**STORCK USA, L.P. and August Storck K.G., Plaintiffs,**

v.

**FARLEY CANDY COMPANY, INC., Defendant.**

No. 92 C 552.

United States District Court, N.D. Illinois, E.D.

March 17, 1993.

Larry L. Saret, Joseph F. Schmidt, John T. Gabrielides, Louis Altman, and Diana S. Flynn, Laff, Whitesel, Conte & Saret, Chicago, IL, for plaintiffs/counterdefendants.

David C. Brezina, Thomas E. Smith, James R. Sweeney, Lee, Mann, Smith, McWilliams & Sweeney; James Dominick Adducci, Jeffrey Edward Schiller, Schuyler, Roche & Zwirner, Chicago, IL; Alan S. Cooper, Banner, Birch, McKie & Beckett, Washington, DC; and Anne Marie Burke, Chicago, IL, for defendant/counter-claimant.

### RULING ON STORCK'S THIRD MOTION FOR PRELIMINARY INJUNCTION

HOLDERMAN, District Judge:

In two previous opinions issued respectively on January 31, 1992 (Storck I) and July 2, 1992 (Storck II) this court entered a preliminary injunction orders in favor of plaintiffs Storck USA, L.P. and August Storck K.G. ("Storck") regarding the trade dress of its Werther's Original candy and against the trade dress of defendant Farley Candy Company, Inc.'s ("Farley") Butter Toffee candy. (PX 2 and PX 275, respectively.) The facts detailed therein will not be repeated here. After the entry of each injunction order, Farley modified the design of its Butter Toffee trade dress in compliance with each respective order.

Shortly after this court's July 2, 1992 injunction order, Farley began to market its Butter Toffee candy using a bag and packaging bearing a third trade dress design (PX 306–310) which complied with both of the court's injunction orders. Storck, in the fall of 1992, conducted a survey as to possible consumer confusion regarding the trade dress of its Werther's Original (PX 1) and the Farley's Butter Toffee third trade dress design (PX 306). In November 1992 Storck filed its third motion for preliminary injunction. After allowing time for further discovery by the parties, the court in early March 1993 conducted a multi-day hearing as to Storck's motion. Based upon the facts adduced, Storck's motion must be denied.

### I. Storck's Likelihood of Success on the Merits.

█ The Seventh Circuit in *Computer Care v. Service Systems Enterprises, Inc.,* 982 F.2d 1063, 1067–68 (7th Cir.1992) reiterated the essential requirements of a trade dress infringement claim stating:

> In order to prove trade dress infringement, the plaintiff must establish that: (1) its trade dress is "inherently distinctive" or has acquired "secondary meaning"; (2) the similarity of the defendant's trade dress to that of the plaintiff creates a "likelihood of confusion" on the part of consumers; and (3) the plaintiff's trade dress is "non-functional"; *Roulo* [*v. Russ Berrie & Co., Inc.*], 886 F.2d [931] at 935; *see also Abbott Labs.* [*v. Mead Johnson & Co.*], 971 F.2d [6] at 20; *Schwinn Bicycle* [*Co. v. Ross Bicycles, Inc.*], 870 F.2d [1176] at 1182–83. The third element, that of "functionality," is actually an affirmative defense on which the defendant bears the burden of proof. *Abbott Labs.,* 971 F.2d at 20; *W.T. Rogers Co. v. Keene,* 778 F.2d 334, 338 (7th Cir. 1985).

Therefore to demonstrate a better than negligible likelihood of success on the merits Storck must present proof as to each essential element of its trade dress infringement claim and must present proof which has a better than negligible chance of overcoming Farley's evidence supporting Farley's affirmative defense as to the functionality and unprotected nature of the trade dress features for which Storck seeks injunctive relief. To do so Storck had relied primarily on survey evidence. The court will address that evidence.

A. *The Survey Evidence.*

The results of Storck's survey (PX 369), according to Storck's expert Robert Lavidge's "best estimate" was 21% confusion (26.6%—5% noise) of those surveyed in the Storck survey. Farley criticizes Storck's survey as not reflecting the marketplace setting and as employing "forced answer" questions. Farley's survey, which Storck criticized as "a reading test," resulted in 7.6% confusion (DX 70) among those surveyed in the Farley survey.

Although the percentage of confusion shown by Storck's most recent survey is substantially less than previous survey results obtained by Storck as to previous Farley's Butter Toffee packaging (PX 275) (13% less than the 34% shown by the survey conducted before Storck II), Storck's survey as to Farley's third trade dress design (hereinafter "Third Bag") if trustworthy, demonstrates sufficient survey confusion to support a finding of likelihood of confusion. *See James Burrough, Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266 (7th Cir.1976). Farley's survey's 7.6% confusion percentage weighs against a finding of likelihood of confusion. *See Henri's Food Products, Co. v. Kraft, Inc.*, 717 F.2d 352 (7th Cir.1983).

The court finds, however, that several factors diminish the significance of the results of Storck's survey as to Farley's Third Bag regarding the issue of the likelihood of confusion as to source. The "forced answer" or "same or different" survey question technique, though approved by the Seventh Circuit in other contexts, *see McGraw–Edison Co. v. Walt Disney Productions*, 787 F.2d 1163, 1172 (7th Cir.1986), may have enhanced Storck's survey results as to the confusion among the survey participants. The extent of this was not shown. More importantly, however, as discussed in the next section, some of the survey confusion may have resulted from the fact that certain features in the trade dress of Farley's Third Bag are similar to elements of the Werther's Original

trade dress which have not been proven to be protected under the Lanham Act. These unprotected trade dress elements contributed to a skewing of the survey results in a way which clouds rather than clarifies the issue of likelihood of confusion as to source among consumers.

B. *The Trade Dress at Issue.*

The total image of Werther's Original trade dress is distinctive but the trade dress features of Farley's Third Bag which Storck seeks now to enjoin relate to generic, functional, and unprotected elements of Werther's Original trade dress.

Storck has twice succeeded in convincing this court to enjoin Farley as to aspects of its Butter Toffee packaging to eliminate any trade dress features which were confusingly similar to Storck's distinctive Werther's Original trade dress. This court at the hearing raised concerns that the features now on the trade dress of Farley's Third Bag (PX 306) are no longer confusingly similar to the protectible aspects of Werther's Original trade dress. Storck perhaps recognizing this in the latter stages of the hearing proposed language for an injunction order that would enjoin Farley's use of certain elements of its trade dress

> *in combination* with other trade dress elements such that the overall effect of such combination is similar in appearance to the trade dress used by plaintiffs on their Werther's Original candy product.

(Storck's counsel's submission during closing argument quoted verbatim in footnote 1 *infra.*)

The Seventh Circuit has recognized this concept in certain factual contexts, *see e.g., Computer Care v. Service Systems Enterprise, Inc.*, 982 F.2d 1063, 1069 (7th Cir. 1992), and has upheld injunctions containing broad language, *see e.g., Scandia Down Corp. v. Euroquilt Inc.*, 772 F.2d 1423 (7th Cir.1985). The order sought by Storck,[1]

---

1. During the closing arguments of the preliminary injunction hearing, Storck's counsel submitted the following proposed injunction order language:

Defendant is hereby preliminary enjoined from any of the following:

1. Selling any butter-flavored candy in any bags, cartons, tubs or other outer packaging which is the same in appearance as, or similar in

however, forecloses from Farley's use features of the trade dress of Farley's Third Bag which are not elements, either alone or in combination, of Storck's Werther's Original trade dress which were proven to be protectible under the Lanham Act.

■■■ The court will initially address the four specific trade dress elements upon which Storck seeks an injunction:

1. *The tan background color* of Storck's Werther's Original (separate from the distinctive Village Scene and candy mound designs, which were infringed by the trade dress elements the court enjoined Farley from using in Storck I and Storck II, respectively) has not been proven to be protectible. *See Nutrasweet v. Stadt Corp.,* 917 F.2d 1024, 1027–28 (7th Cir.1990). Unlike the cases in which certain colors used on certain products have been accorded protection, *see Master Distributors, Inc. v. Pako,* 986 F.2d 219 (8th Cir.1993) (blue tape on film); *In re Owens–Corning Fiberglass Corp.,* 774 F.2d 1116 (Fed.Cir.1985) (pink insulation) no secondary meaning as to Werther's Original tan background color has been shown.

2. *The gold foil wrapper* around each piece of Werther's Original candy, as discussed in Storck II, pages 19–26, is not distinctive, has not acquired secondary meaning and is not protected under the Lanham Act;

3. *The two unwrapped candies* pictured on Farley's Third Bag (PX 306) are, of course, generic, descriptive and not similar to the mound of unwrapped candy that covers the lower part of the Werther's Original bag (PX 1). The court notes that the actual individual candy pieces of Werther's Original and Farley's Butter Toffee are almost indistinguishable when viewed unwrapped. Storck claims no protection in the shape or size of its Werther's Original candy pieces. The shape and size of both Storck's and Farley's candies are dictated by the molds which make the candy. Thus the candy pieces are generic. The picture of two of Farley's unwrapped, generic candy pieces in its Butter Toffee Third Bag trade dress (PX 306) does not infringe the distinctive mound of unwrapped candy pictured on Storck's Werther's Original trade dress (PX 1). Farley was enjoined in Storck II of displaying a mound of unwrapped candy on its trade dress. Storck (pursuant to its closing argument submission, footnote 1 continued *infra* page 528, paragraph 3A) seeks to enjoin Farley from displaying a picture of even one unwrapped Farley

---

appearance to, any bags, cartons, tubs or other outer packaging which is presently used by defendant for its product known as Farley's Butter Toffee.

2. Selling any butter-flavored candy which has a trade dress that incorporated any of the following:

A. An outer package for such candy having a yellow, blonde or tan overall color or background color *in combination with* other trade dress elements such that the overall effect of such combination is confusingly similar in appearance to the trade dress presently used by plaintiffs on their Werther's Original candy product;

B. A gold-tone inner wrapper for individual pieces of said candy, *in combination with* other trade dress elements such that the overall effect of such combination is confusingly similar in appearance to the trade dress presently used by plaintiffs on their Werther's Original candy product;

C. A picture or other representation of one or more individual wrapped pieces of such candy on the outer package thereof, *in combination with* other trade dress elements such that the overall effect of such combination is confusingly similar in appearance to the trade dress presently used by plaintiffs on their Werther's Original candy product;

D. A transparent window anywhere on the outer package thereof, *in combination with* other trade dress elements such that the overall effect of such combination is confusingly similar in appearance to the trade dress presently used by plaintiffs on their Werther's Original candy product;

3. Selling any butter-flavored candy in any bags, cartons, tubs or other outer packaging having a yellow, blonde or tan overall color or background color *in combination with* any of the following:

A. A picture on the outer packaging of one or more unwrapped individual pieces of candy which are similar in appearance to Werther's Original candy;

B. One or more gold-wrapped individual pieces of candy visible through a transparent window in the outer packaging;

C. A picture on the outer packaging of one or more gold-wrapped individual pieces of candy.

Butter Toffee candy as part of its trade dress. Neither the facts nor the law support such a result where as here the product is generic and not displayed in a confusingly similar way to a plaintiff's distinctive design which in this case is the mound of unwrapped candy.

4. *The transparent plastic window* on the front of Farley's package and the transparent plastic window on the back of Werther's Original are clearly functional to display the individually wrapped candy pieces inside the respective packages. According to the testimony at the hearing, a transparent window in candy packages such as Werther's Original or Farley's Butter Toffee is a functional necessity to effectively market the candy by allowing customers to view the individual wrapped candy being purchased. Indeed, many candy producers employ this feature in their packaging (DX 79).

█ The consideration of the overall image displayed by the trade dress of Werther's Original and Farley's Butter Toffee respective packages calls for an evaluation of the trade dress elements in combination with one another. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* — U.S. —, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Having considered the total image created by the trade dress elements "in combination", the court finds that the two trade dress designs are sufficiently dissimilar that Storck's trade dress infringement claim as to Farley's Third Bag is quite weak.

Upon viewing the Farley's Third Bag (PX 306) a consumer sees Farley's name near the upper left corner of the front of the Farley's package where Farley's distinctive red and white logo is prominently displayed. The Farley's name is in large white letters inside the horizontally elongated Farley logo oval. The words "Butter Toffee" are on one horizontal line in even larger red letters. The Farley's milk can and butter churn design (which are no longer inside an oval as they were in Storck I and Storck II) are located in the upper right corner of the front of Farley's package which is a different location than the Village Design with the pouring pitchers on the Werther Original bag (PX 1).

Farley's phrase "Hard candy made with real butter and cream" is in navy blue type, small print letters, as contrasted with the larger red letters of the words "Butter Toffee" on one·horizontal line starting beneath the "e" in "Butter" and continuing beneath the word "Toffee" (PX 306). On the Werther's Original bag, the words "Werther's Original" are brown and depicted on two lines with the word "Original" starting on the lower line beneath the "r" in "Werther's". The Werther's Original phrase "The classic candy made with real butter and fresh cream" are in small print beneath the word "Original" in the same brown color as the "Werther's Original" words (PX 1).

The two most prominent features of the "Werther's Original" trade dress on the front of the bag are the Village Design with the pouring pitchers and the unwrapped candy mound which covers the lower one-third of the front of the Werther's Original bag and displays more than 30 unwrapped candy pieces (PX 1). This mound extends to the back of the Werther's bag where another approximately one dozen unwrapped candy pieces are displayed. Trade dress elements confusingly similar to these prominent Werther's Original features do not appear anywhere on the Farley's Third Bag (PX 306) front or back. The most prominent feature on the front of the Farley's Third Bag other than the red and white "Farleys" logo and the words "Butter Toffee" (which appear nowhere on the Werther's Original bag) is the transparent display window which has a red, white and blue banner displaying "Made in America" in white letters in the upper left corner of the window. This is in stark contrast to the light brown "The Old World Recipe" banner which is light brown in color beneath the two-toned pouring pitchers of Werther's Original Village Design.

The two unwrapped Farley's Butter Toffee candy pieces which appear on the front of the Third Bag (PX 306) are generic and descriptive of the product. Because the actual unwrapped Werther's Original and Farley's Butter Toffee candy are identical in shape, size and color (upon which Storck claims no Lanham Act protection) some survey confusion may have arisen when the survey partic-

ipants viewed the displayed pictures of the unwrapped respective candy products. Indeed, a substantial number of the people surveyed in both surveys commented that the pictures of the unwrapped candy looked the same, which the court believes may have caused some of their confusion as to source. As stated earlier, Storck claims no Lanham Act protection in the actual candy pieces themselves. The shape and size of the candy is dictated by the mold necessarily utilized in the candy making process. Therefore, Storck should not be allowed to prohibit Farley's from displaying a picture of its unwrapped Butter Toffee candy pieces on its packaging as long as the Farley's picture is not a mound as enjoined in Storck II.

Farley's Third Bag's light yellow background color is descriptive of "butter". Using the descriptive color yellow is popular among butter toffee and butterscotch hard candy makers. (DX 79.) Indeed, yellow in its various shades is a highly popular background color in the trade dress of many food products. The tan background color of the Werther's Original bag is different from Farley's when viewed either as a single trade dress element or as a part of the total image of the Werther's Original trade dress.

The back of the two parties' bags respective are very different. The back of Werther's Original bag contains its transparent display window, its Village Design with pouring pitchers and the mound of unwrapped candy which continues to the back of the bag from the front (PX 1.) The back of Farley's Third Bag displays two white horizontally elongated rectangles and the red and white "Farley's" logo (PX 306.) No confusion could reasonably result from a consumer viewing the backs of the respective bags.

III. *Balancing the Harms.*

■ Storck's Werther's Original has been the number one selling hard candy for years and has continued to enjoy tremendous success as to sales in the United States during the pendency of this case. Werther's Original sales grew from $55,962,000 in 1991 to $105,154,000 in 1992. Although irreparable harm is presumed in trade dress infringement cases, *see A.J. Canfield Co. v. Vess*

*Beverages, Inc.*, 796 F.2d 903 (7th Cir.1986), the magnitude of Storck's presumed irreparable harm seems minimal in light of the success Werther's Original has achieved in the face of what Storck claims is the continued infringement by Farley's Butter Toffee as to the trade dress of Werther's Original.

In balancing the irreparable harms, the court must consider the impact of the preliminary injunction as to both parties. Farley's claims that if this court were to grant a third injunction, it would put Farley out of the butter toffee candy business with a concomitant loss of goodwill and customer confidence regarding all Farley candy products. Storck claims it will suffer, if the injunction is denied, continued loss of its goodwill resulting from consumer confusion. Separate from Storck's survey results, the phenomenal marketplace success of Storck's Werther's Original undermines a finding of substantial loss of goodwill or of substantial confusion among consumers.

Balancing the likelihood of success on the merits with the respective irreparable harms as required by the sliding scale analysis. Employing that analysis the court finds that Storck's preliminary injunction motion should be denied.

The court finds that Farley's Third Bag trade dress (PX 306) infringes not at all, or perhaps only slightly on Storck's Werther's original (PX 1). Accordingly, Storck has at best only slightly more than a negligible chance of success on the merits as to Farley's Third Bag trade dress. Analyzing the potential irreparable harms to the parties, the balance weighs heavily in favor of denying the injunction.

*CONCLUSION*

Storck's Motion for a Third Preliminary Injunction is DENIED. The parties are once again urged to discuss settlement. Discovery on the merits is to proceed. The case is set for a report on status April 19, 1993 at 10:00 a.m.