STORCK USA, L.P. and August Storck K.G., Plaintiffs–Appellants,

v.

FARLEY CANDY COMPANY, Defendant–Appellee.

No. 93–1700.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1993.

Decided Jan. 14, 1994.

Larry L. Saret, John T. Gabrielides, Joseph F. Schmidt (argued), Louis Altman, Diana Flynn, Laff, Whitesel, Conte & Saret, Chicago, IL, for plaintiffs-appellants.

Ann Marie Burke, Chicago, IL, David C. Brezina, Thomas E. Smith, James R. Sweeney (argued), Damian Wasserbauer, Lee, Mann, Smith, McWilliams & Sweeney, Chicago, IL, for defendant-appellee.

Before CUMMINGS and ROVNER, Circuit Judges, and GRANT, District Judge.*

CUMMINGS, Circuit Judge.

In this trade dress infringement case plaintiffs Storck USA, L.P. and August Storck K.G. (referred to jointly as "Storck" or "plaintiff") brought suit against defendant Farley Candy Company ("Farley") alleging, among other things, false designation of origin and unfair competition. Storck has already received two injunctions preliminarily enjoining Farley from utilizing certain elements of Storck's trade dress during the pendency of the suit. Plaintiff objected in the district court to defendant's most recent modification of its trade dress and sought a third preliminary injunction, which was denied. This interlocutory appeal followed. The Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

*Background*

Storck, which manufactures, distributes and sells candy throughout the United States, brought suit against Farley, a competitor candy manufacturer, for trade dress infringement pursuant to 15 U.S.C. § 1125(a). At issue is the district court's refusal to issue a third preliminary injunction against Farley to protect the trade dress of Storck's "Werther's Original" butter toffee candy until a final judgment on the merits may be had.

In 1980 plaintiff introduced its "Werther's Original" candy into interstate commerce. In 1988 plaintiff modified the Werther's Original packaging and began to advertise the candy aggressively, emphasizing the package's trade dress in the advertisements. The campaign was successful and Storck's sales of Werther's Original candy increased from $3.6 million in 1988 to over $105 million in 1992. Plaintiff describes the current trade dress of Werther's Original as follows (Br. 5–6):

[The package has] a blond background color ..., a Village Design which is oval in shape and is positioned in the left center portion of the package with two pitchers pouring cream into a merged stream, a mound of unwrapped candy pieces extending across the bottom half of the package, the trademark WERTHER'S ORIGINAL positioned in the center and right upper portion of the package with the phrase "the classic candy made with real butter and fresh cream" appearing below it. The mound on the front of the package continues around the back of the package, which contains a clear window displaying the individual pieces of candy wrapped in gold foil.

[The gold foil wrapper around the individual pieces of candy is printed with] [t]he mark WERTHER'S and the design of a pitcher and flowers ... in cream letters.... Storck's television commercial includes a close-up of the wrapper, and one frame of the commercial's story board features a twinkling wrapper to emphasize the gold color.

The "Village Design" to which plaintiff alludes consists of "two brown and orange pitchers pouring their white liquid contents into a merged stream. In the background ... is a 'pastoral' image of a blue sky, green grass, flowers, a mountain range, and an Alpine village." *Storck USA, L.P. v. Farley Candy Co., Inc.*, 785 F.Supp. 730, 732 (N.D.Ill.1992) ("*Storck I*").

In 1990 Farley decided to introduce a butter toffee candy of its own. Part of its product development involved designing a package for the new candy. Storck introduced evidence suggesting that Farley intentionally copied elements of Storck's Werther's Original trade dress in designing the package for its own toffee candy. By January 1992 Farley was ready to begin shipping the new candy, but Storck filed suit and obtained a temporary restraining order preventing Farley from shipping its toffee candy in that package. The district court described Farley's first package as follows:

* Hon. Robert A. Grant, District Judge for the Northern District of Indiana, sitting by designation.

Defendant Farley's [first] package for its butter toffee candy [was] a bag in the same size (7 ounces) and in the same shape (rectangular) as the bag for Storck's Werther's Original butter toffee candy. A design on the left center portion of the front panel of Farley's butter toffee package depict[ed] a pair of containers, one orange and one brown, pouring their creamy liquid contents into a merged stream onto a mound of unwrapped candy positioned on the lower left portion of the front panel.... The background of Farley's bag [was] light yellow. A clear window in the lower right-hand corner of the front panel of the package display[ed] the candy inside the bag individually wrapped with gold-colored foil.

*Id.* at 732 (citations to the record omitted). Farley's pouring containers were set against an oval containing an upright milk can and butter churn. The oval had a blue upper background and a green lower background. Pl.App. at 16.

Before the temporary restraining order expired, the district court conducted a preliminary injunction hearing and enjoined Farley from "using any trade dress on any Farley candy package which is in any way similar to the pouring pitchers image in the Village Design used by Storck as trade dress for its Werther's Original butter toffee candy." *Storck I,* 785 F.Supp. at 736–737.

After the preliminary injunction was entered in *Storck I* Farley redesigned its package, eliminating the pouring pitchers and stream of liquid and changing the background color in the oval from blue and green to all green. In other respects its trade dress was unchanged. In March 1992 plaintiff filed a Supplemental Complaint alleging that Farley's second package infringed on Storck's trade dress. This time the judge entered an injunction preliminarily enjoining Farley from:

(a) [U]sing any trade dress in the bottom half of the front panel of any Farley candy package which is in any way similar to the image of a mound of unwrapped candy pieces used by Storck as trade dress for its Werther's Original butter candy.

(b) [U]sing any trade dress in the left half of the front panel of any Farley candy package which is in any way similar to the pastoral image or oval-shaped design used by Storck as trade dress for its Werther's Original butter candy.

*Storck USA, L.P. v. Farley Candy Co., Inc.,* 797 F.Supp. 1399, 1415–1416 (N.D.Ill.1992) ("*Storck II*").

Farley thereupon redesigned its package a third time. The district court described it as follows:

[A] consumer sees Farley's name near the upper left corner of the front of the Farley's package where Farley's distinctive red and white logo is prominently displayed. The Farley's name is in large white letters inside the horizontally elongated Farley logo oval. The words "Butter Toffee" are on one horizontal line in even larger red letters. The Farley's milk can and butter churn design (which are no longer inside an oval as they were in Storck I and Storck II) are located in the upper right corner of the front of Farley's package which is a different location than the Village Design with the pouring pitchers on the Werther [sic] Original bag.

*Storck USA, L.P. v. Farley Candy Co., Inc.,* 821 F.Supp. 524, 529 (N.D.Ill.1993) ("*Storck III*"). In August 1992 plaintiff filed a Second Supplemental Complaint alleging that Farley's third package infringed on Storck's trade dress. The judge refused to enter a third preliminary injunction against Farley, and Storck's appeal followed. Farley in turn has moved this Court to dismiss the appeal as frivolous and filed for purposes of delay.

Because the judge made no error of law nor did he make any clearly erroneous findings of fact, we affirm the decision not to grant Storck a third preliminary injunction. Farley's motion to dismiss the appeal, however, is denied.

### Analysis

A preliminary injunction is warranted if the movant can make a threshold showing (1) that the case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; (3) that the movant will suffer irreparable harm if the

injunction is not granted. If these three conditions are met, then the court must balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently. The balancing involves a "sliding scale" analysis: the greater the movant's chance of success on the merits, the less strong a showing must it make that the balance of harms is in its favor. In addition the court must consider the public interest in whether the injunction is to be granted or denied. See, *e.g., Nalco Chemical Co. v. Hydro Technologies, Inc.,* 984 F.2d 801, 802 (7th Cir.1993); *Abbott Laboratories v. Mead Johnson & Co.,* 971 F.2d 6, 11–12 (7th Cir.1992). "The district court weighs each of these factors, and we defer to that assessment as we perform our review." *Nalco Chemical,* 984 F.2d at 802. The district court has considerable discretion in deciding whether to issue a preliminary injunction, *Computer Care v. Service Systems Enterprises,* 982 F.2d 1063, 1067 (7th Cir.1992), and we will reverse its decision only for an abuse of that discretion, including an erroneous conclusion of law or a clearly erroneous finding of fact. Cf. *Cooter & Gell v. Hartmarx,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359.

In this case the court found in Storck's favor on the threshold issues. *Storck II,* 797 F.Supp. at 1412; *Storck III,* 821 F.Supp. at 529, 530. At the balancing stage, however, the court found that the balance of hardships militated against issuing a third preliminary injunction, and therefore denied Storck's motion. *Storck III,* 821 F.Supp. at 530. Storck objects to this determination.

■ When the court weighs the interests of the parties and the public interest in whether the injunction is to be granted or denied, it "seek[s] at all times to minimize the costs of being mistaken." *Abbott Laboratories,* 971 F.2d at 12 (internal quote marks omitted). Thus "the more likely it is that the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it

is that the plaintiff will succeed, the more the balance need weigh towards its side." *Id.* Balancing the hardships therefore involves a two-step process. First the court must assess the plaintiff's chance of success.[1] Next it must balance the hardships in accordance with this determination.

■ The district court in this case first determined that "the two trade dress designs [Storck's bag and Farley's third bag] are sufficiently dissimilar that Storck's trade dress infringement claim as to Farley's Third Bag is quite weak." *Storck III,* 821 F.Supp. at 529. In balancing the harms, therefore, the court required Storck to make a strong showing in favor of granting the injunction. *Id.* at 530. Because Storck could not make the strong showing necessitated by its slim chance of success on the merits, the court declined to enjoin Farley from utilizing its third bag. *Id.* Storck objects both to the district court's determination that it is unlikely to succeed on the merits of its claim and also to the court's finding that the balance of hardships militates against issuing a third preliminary injunction.

### A. Storck's Chance of Success on the Merits

In order to prevail on the merits of its claim Storck must demonstrate, among other things, that the similarity of Farley's third trade dress to its own is such as to create a likelihood of confusion on the part of consumers as to the source of the goods. See, *e.g., Computer Care,* 982 F.2d at 1068. The district court found that Storck's chance of making this showing was slim, based primarily upon a visual inspection of the trade dresses at issue. *Storck III,* 821 F.Supp. at 529. On appeal Storck argues that the judge erred as a matter of law by comparing its trade dress on an element-by-element basis to Farley's trade dress, instead of considering each package's overall appearance. It also argues that the judge erred in discounting the results of a survey that Storck believes bolsters its claim of likelihood of consumer confusion. Our review of the record indicates that the

---

1. This inquiry is similar to that undertaken at the threshold stage into the plaintiff's likelihood of success. In making its threshold demonstration, however, the plaintiff must only show that it has

*some* likelihood of success on the merits. At the balancing stage the court must determine how great that likelihood is.

court did not err either in its determination that Farley's third trade dress was not overly similar to Storck's or in discounting the results of Storck's survey.

First, the record indicates that the district court did not make a simple element-by-element comparison of the trade dresses, as plaintiff complains. The court stated that it "evaluat[ed] ... the trade dress elements in combination with one another" and "considered the total image created by the trade dress elements 'in combination'" when it assessed plaintiff's chance of success on the merits. *Id.* The judge concluded that "Farley's Third Bag trade dress infringes not at all, or perhaps only slightly on Storck's Werther's Original." *Id.* at 530 (citations to the record omitted). In describing the trade dresses the court of course listed their elements in a side-by-side analysis. *Id.* at 529–530. There is no other way to describe on paper what plaintiff argues ought to be a gestalt experience. We will take the court at its word that its actual comparison was of the overall appearance of the trade dresses; therefore there was no error of law.

Likewise, the court did not err in discounting the results of plaintiff's survey. Storck introduced survey evidence that, if credited, tends to show that 21% of the respondents were confused as to the source of the two candies. The judge, however, elected not to place great weight on the results of the survey, at least in part because he was not convinced that there was a causal connection between the appearance of the trade dresses at issue and the confusion shown by the survey. *Id.* at 527, 529. He had already found that the two trade dresses are not very similar. The judge therefore discounted the results of the survey because, while it might have indicated a likelihood of consumer confusion, it did not demonstrate that Farley's third trade dress was the source of that confusion.

We note, however, that although the judge in this case did not err by discounting Storck's survey, judges are not always free to ignore survey evidence of confusion on the ground that the trade dresses at issue are not sufficiently similar. In appropriate cases evidence of consumer confusion might mili-

tate in favor of the conclusion that the trade dresses at issue are in fact confusingly similar. In this case, however, the judge identified several factors that might contribute, independent of similarity between the trade dresses, to the survey results. *Id.* at 527, 529.

Because the district court did not commit an error of law nor did it clearly err in its findings of fact, we defer to its determination that Storck is unlikely to succeed on the merits of its claim.

### B. Balancing the Harms

Storck raises a number of objections to the district court's balancing of hardships. It ignores, however, the effect of the court's determination of its chance of success on the process of balancing. Once the district court determined that Storck's likelihood of success on the merits of its claim was slight, it required Storck to make a proportionately stronger showing that the balance of harms was in its favor. Accord *Abbott Laboratories,* 971 F.2d at 12. In this context the court found, on the one hand, that if Farley were not preliminarily enjoined from utilizing its third bag and that bag were later determined to infringe on Storck's trade dress, Storck would suffer "continued loss of ... goodwill resulting from customer confusion." *Storck III,* 821 F.Supp. at 530. It found on the other hand that if an injunction requiring Farley to cease using its third package were issued improvidently, Farley might be put out of the butter toffee business, "with a concomitant loss of goodwill and customer confidence regarding all Farley candy products." *Id.* We note in addition that even if such an injunction would not remove Farley from the butter toffee market, Farley at the very least would face the Hobson's choice of designing and producing still another new package or taking its product off the market until a decision on the merits might be had.

After the district court identified the "costs of being mistaken," *Abbott Laboratories,* 971 F.2d at 12, in granting or denying the preliminary injunction it then held that on balance the harm to Storck did not sufficiently outweigh the harm to Farley, given Storck's slim chance of success on the merits,

to warrant issuing a third preliminary injunction against Farley. *Storck III,* 821 F.Supp. at 530.

We must defer to the district court's weighing of the factors involved in deciding whether to grant a preliminary injunction. *Nalco Chemical,* 984 F.2d at 802. In this case the judge's weighing was certainly not clearly erroneous, particularly when this Court considers the "consequences to the public interest of granting or denying preliminary relief." *Abbott Laboratories,* 971 F.2d at 12. The district court credited Farley's contention that a third injunction would put it out of the butter toffee business. Such a result would harm not only Farley but also the public insofar as Farley would cease providing price competition with Storck, the clear market leader. Likewise, even if such an injunction would not take Farley's candy off the market permanently it would, as noted above, either result in Farley withholding its product from the market until a final decision could be had or result in an added cost to consumers because of Farley designing and producing still more packaging. Considering Farley's likelihood of prevailing on the merits, and therefore ultimately being allowed to continue using its existing trade dress, this cost to consumers must be taken seriously.

The district court will be affirmed on its decision not to grant Storck's motion for a third preliminary injunction.

### C. *Farley's Motion to Dismiss Storck's Appeal*

■ Farley has moved the Court to dismiss Storck's appeal entirely. Its brief in support of this motion, while it addresses the merits of Storck's claim, does not provide any support for its position that the appeal is frivolous or filed for purposes of delay. While we do not agree with Storck's arguments, they do not sink to the level of frivolity. Farley's motion to dismiss the appeal will be denied.

### Conclusion

For the foregoing reasons the district court's denial of Storck's motion for a third

preliminary injunction is affirmed. Farley's motion to dismiss Storck's appeal is denied.