**DUCT-O-WIRE COMPANY, a California corporation, Plaintiff-Appellee,**

v.

**U.S. CRANE, INCORPORATED, an Ohio corporation and Darryl W. Iles, Defendants-Appellants.**

No. 93-3723.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1994.

Decided Aug. 2, 1994.

Eric J. Klumb, argued, Dennis L. Fisher, Meissner & Tierney, Milwaukee, WI, for plaintiff-appellee.

Richard J. Rinear, argued, Droder & Miller, Cincinnati, OH, for defendants-appellants.

Before BAUER and FLAUM, Circuit Judges, and GRANT, District Judge.*

BAUER, Circuit Judge.

This case involves a suspiciously clever business practice. A company, U.S. Crane, built its business by subscribing to the expired phone numbers of other companies. One of these companies, the Duct–O–Wire Company, found out that U.S. Crane had subscribed to its expired phone number (the "old number"). Duct–O–Wire brought this lawsuit to stop U.S. Crane's use of its old number and to recover damages it claims it has incurred because of U.S. Crane's scheme. As part of its suit, Duct–O–Wire sought a preliminary injunction against U.S. Crane. The district court granted Duct–O–Wire's request for preliminary injunctive relief against U.S. Crane. U.S. Crane appeals.

## I.

In the early part of 1992, Darryl Iles founded U.S. Crane as a call-order company. Customers who bought cranes and other related materials would call U.S. Crane and order such goods by phone from Iles. The business started slowly; Iles ran U.S. Crane out of his Cincinnati, Ohio home. U.S. Crane was incorporated in October of 1992, with Iles as its president and sole shareholder.

Iles first order of business was to obtain the expired phone number of a company, ACCO of York, Pennsylvania, which was engaged in a similar business. U.S. Crane paid the phone company for the number and, when callers dialed ACCO's expired number, the phone company redirected the call to U.S. Crane. Iles and his small staff normally answered calls to this number by giving their first names and asking, "May I help you?"

U.S. Crane's business grew slowly and steadily as Iles began to accumulate more expired phone numbers of companies. Eventually, U.S. Crane obtained and subscribed to at least six such numbers. The business outgrew Iles' home and, in June of 1993, U.S. Crane acquired office and warehouse space in Cincinnati. Iles added a couple of employees to U.S. Crane's staff, and these new employees took incoming calls and placed orders with suppliers, including Duct–O–Wire.

Duct–O–Wire is a California corporation engaged in the production of heavy industrial cable and mobile electrification systems. Duct–O–Wire's production facilities were located in Waukesha, Wisconsin until December of 1988. At that time, Duct–O–Wire moved from Waukesha to Oconomowoc, Wisconsin, its present principal place of business. Before the move, Duct–O–Wire's old number was 414–544–4944. After the move, Duct–O–Wire obtained a new phone number, although for the following year persons who called the old number received a recorded message which advised them of Duct–O–Wire's new number.

The recorded message eventually stopped and, in February of 1993, U.S. Crane subscribed to Duct–O–Wire's old number. U.S. Crane began receiving calls on the old number on March 2, 1993, and its sales of Duct–O–Wire products increased dramatically. U.S. Crane employees answered the old number normally by either giving their names and the familiar "May I help you?" or by simply stating, "Electrification products." Duct–O–Wire's products are known in the industry as electrification products. Additionally, of the six expired phone numbers obtained by U.S. Crane, only Duct–O–Wire

---

* The Honorable Robert A. Grant, United States District Judge for the Northern District of    Indiana, is sitting by designation.

was uniquely in the business of providing electrification products.

In the seven-month period prior to December 31, 1992, Duct–O–Wire's sales to U.S. Crane totalled less than $250. Its sales to U.S. Crane for January and February of 1993 combined totalled less than $650.

Things changed quickly, however, once U.S. Crane obtained Duct–O–Wire's old number. In March of 1993, Duct–O–Wire's sales to U.S. Crane soared to more than $4,100. In June of that year, Duct–O–Wire's sales to U.S. Crane topped out at more than $6,900.

At first, Duct–O–Wire was thrilled with these increased sales. Duct–O–Wire even increased its discount to U.S. Crane because of the "success" U.S. Crane was having in selling Duct–O–Wire products.

This amicable commercial relationship between U.S. Crane and Duct–O–Wire did not last. Duct–O–Wire discovered that U.S. Crane had obtained Duct–O–Wire's old number, and relations between the two companies turned sour. Duct–O–Wire asked U.S. Crane to stop using Duct–O–Wire's old number. When U.S. Crane refused, Duct–O–Wire acted to stop what it perceived as wrongful and (more importantly for our purposes) illegal conduct by U.S. Crane. In July of 1993, Duct–O–Wire stopped selling its products to U.S. Crane and, in August of 1993, Duct–O–Wire sued U.S. Crane.

Duct–O–Wire's complaint alleges a variety of tortious conduct by U.S. Crane and Iles, including, in particular, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and the Wisconsin Organized Crime Control Act ("WOCCA"), Wis.Stat. § 946.82(3), (4). Duct–O–Wire's complaint also states a cause of action against U.S. Crane and Iles for tortious interference with existing and prospective contractual relations.

Duct–O–Wire asked the district court for a preliminary injunction, and the court held an evidentiary hearing on Duct–O–Wire's motion. After the hearing, the court observed that U.S. Crane's "whole modus operandi ... was to not only play footsie with customers as to who the caller was speaking to," but also to allow each customer "to take for granted that it was either dealing with a successor to Duct–O–Wire or perhaps the same firm with a name change or the like." The court concluded that, at a minimum, U.S. Crane's scheme amounted to tortious interference with contractual rights. The court noted additionally that U.S. Crane's use of Duct–O–Wire's old number produced confusion that, in some instances, resulted in duplicate shipments sent to customers.

On October 1, 1993, the court issued its written order granting Duct–O–Wire's motion for a preliminary injunction. The court ordered the old number to be placed on what it labelled "split interrupt" service. Split interrupt service, the order explained, works as follows: when a caller calls the old number, an interrupt operator asks the caller whom the caller is trying to reach. If the caller identifies U.S. Crane (or a reasonable derivative of U.S. Crane), the operator provides a telephone number designated by U.S. Crane for the caller to call. Similarly, if the caller identifies Duct–O–Wire (or a reasonable derivative of Duct–O–Wire) the operator provides a telephone number designated by Duct–O–Wire for the caller to call. The court also ordered each party to pay half of any extra costs incurred by the split interrupt service.

## II.

U.S. Crane appeals the district court's decision to grant Duct–O–Wire's motion for a preliminary injunction. We have jurisdiction over U.S. Crane's interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1), which in relevant part provides that "the courts of appeals shall have jurisdiction of appeals from ... [i]nterlocutory orders of the district courts of the United States ... granting ... injunctions." 28 U.S.C. § 1292(a)(1).

A district court has considerable discretion in deciding whether to grant or deny a motion for a preliminary injunction. We review the district court's decision to grant a preliminary injunction under the abuse of discretion standard. *Storck USA L.P v. Farley Candy Co.,* 14 F.3d 311, 314 (7th Cir.1994). We review the district court's factual findings for clear error and its legal

conclusions *de novo. Wisconsin Music Network v. Muzak, Ltd. Partnership,* 5 F.3d 218, 221 (7th Cir.1993).

A district court may grant a preliminary injunction if the party seeking relief can show (1) that the case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that the party seeking relief will suffer irreparable harm if the injunction is not granted. *Storck USA,* 14 F.3d at 313–14. If the moving party satisfies these conditions, the court must balance the harm to the nonmoving party if relief is granted. *Id.* at 314. This balancing involves what we have termed a "sliding scale" analysis: the greater the moving party's chance of success on the merits, the less strong a showing must it make that the balance of harms is in its favor; conversely, the less likely it is that the moving party will succeed on the merits, the more the balance need weigh towards its side. *Abbott Labs. v. Mead–Johnson & Co.,* 971 F.2d 6, 11–12 (7th Cir.1992). The court must also consider the public interest in terms of the consequences of granting or denying the injunction to non-parties. *Storck USA,* 14 F.3d at 314.

The district court found that U.S. Crane's scheme amounted to a tortious interference with Duct–O–Wire's contractual rights. As we have explained, Duct–O–Wire alleges other causes of action (e.g., RICO and WOCCA). Like the district court, we find it unnecessary to consider those other theories of liability at this stage of the case. We review, then, Duct–O–Wire's likelihood of success on the merits only for the tortious interference claim.

Wisconsin provides the relevant law. It recognizes as a cause of action the tortious interference with existing and prospective contractual relations. *Cudd v. Crownhart,* 122 Wis.2d 656, 364 N.W.2d 158, 160 (Ct.App.1985). Under Wisconsin law, to state a claim for intentional interference with an existing or prospective contract, a party must allege that: (1) the plaintiff had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere. *Bersch & Co. v. Dairyland Greyhound Park, Inc.,* No. 92–2288, 1994 WL 185996, at *9 (Wis.Ct.App. May 17, 1994); *see also Boyle v. Pine Beach Club,* No. 93–1171, 1994 WL 162403, at *3 (Wis.Ct.App. May 3, 1994) (discussing tort of interference with contract); *Wausau Medical Ctr. v. Asplund,* 182 Wis.2d 274, 514 N.W.2d 34, 44 (Ct.App.1994) (same).

In this case, the record supports the district court's conclusion that Duct–O–Wire is likely to succeed on the merits. At a minimum, Duct–O–Wire demonstrated that it had existing and prospective contracts with call-in customers who called U.S. Crane while thinking they were speaking with Duct–O–Wire. U.S. Crane obviously interfered with these contracts by subscribing to Duct–O–Wire's expired phone number, and U.S. Crane's interference was intentional. U.S. Crane's interference caused Duct–O–Wire to be deprived of retail sales to customers who might otherwise have called Duct–O–Wire directly. And, in the context of preliminary injunctive relief, U.S. Crane was not justified or privileged to interfere with these prospective contractual relations. Duct–O–Wire sufficiently demonstrated its likelihood of success on the merits, at least as far as the tort of tortious interference of contract is concerned.

Duct–O–Wire also satisfied the other requirements for obtaining preliminary injunctive relief. No adequate remedy at law exists because the harm without preliminary injunctive relief would be ongoing—that is, Duct–O–Wire's current and prospective contractual relations (in the form of present and future sales to customers) would be harmed by the continued use by U.S. Crane of the old number. Moreover, the confusion caused by all of this—duplicate orders and customers who misunderstand the commercial relationship between Duct–O–Wire and U.S. Crane—could damage Duct–O–Wire's commercial reputation. Duct–O–Wire's irreparable harm is that it will lose sales and the opportunity to maintain and develop relation-

**510**

ships with existing and potential customers of Duct–O–Wire products.

As to U.S. Crane, the district court's order does no harm. Callers who want to speak with U.S. Crane can still do so. All they have to do is ask the interrupt operator for U.S. Crane's number. Finally, the public interest is well served by the order because the public now will be able to decide which of the two it wishes to call.

And therein lies the crux of this case. The district court's order allows buyers of Duct–O–Wire products to make a decision—from whom to buy—with more information rather than less. The order makes certain that potential buyers of Duct–O–Wire products know who it is they are calling. That is all it does.

Knowledge, Francis Bacon observed, is power. In this case, knowledge is power and power is money—the profits at stake in the sale of Duct–O–Wire products. The district court's order expands the realm of consumer knowledge, and as between ignorance and confusion on the one hand and knowledge and informed choice on the other, the latter prevails. The district court's order makes that clear.

AFFIRMED.