**AMERICAN TRAIN DISPATCHERS DEPARTMENT OF the BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Plaintiff,**

v.

**FORT SMITH RAILROAD CO., Defendant.**

No. 96–1248.

United States District Court, C.D. Illinois, Peoria Division.

June 18, 1996.

David W. Stuckel, Harvey & Stuckel, Peoria, IL, Michael S. Wolly, William W. Thompson, II, Zwerdling Paul Leibig Kahn Thompson & Wolly PC, Washington, D.C., for plaintiff.

Daniel A. LaKemper, Peoria, IL, for defendant.

## MEMORANDUM ORDER GRANTING PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

McDADE, District Judge.

On May 28, 1996, an evidentiary hearing was held in this case on Plaintiff's Motion for

Preliminary Injunction [Doc. # 3–1] requiring Defendant to participate in mediation of the parties' collective bargaining dispute before the National Mediation Board ("NMB" or "Board"). Pursuant to Fed.R.Civ.P. 65(a)(2), the Court consolidated that hearing with a trial on the merits and ruled in favor of Plaintiff. Plaintiff filed a proposed Order on June 7, 1996. Defendant was granted leave to file an Answer to the Complaint and to file objections to Plaintiff's proposed Order. After considering all of the pleadings and the arguments on both sides, the Court makes the following FINDINGS OF FACT and CONCLUSIONS OF LAW:

### FINDINGS OF FACT

1. The facts in this case are undisputed.

2. Plaintiff American Train Dispatchers Department of the Brotherhood of Locomotive Engineers ("the Union") is the certified collective bargaining representative under the Railway Labor Act (RLA) for the locomotive engineers, conductor/brakemen, and carmen employed by Defendant Fort Smith Railroad Co. ("Fort Smith" or "the Company").

3. On August 26, 1994, the Union served Defendant with a notice of proposed terms and conditions of employment to be incorporated into the parties' first collective bargaining agreement. On October 11, 1994, the parties began bargaining.

4. On March 28, 1995, the Union invoked the services of the National Mediation Board to assist the parties in their negotiations. The Board assigned federal mediator Robert Martin to assist the parties. Mediation sessions were held at the Company's headquarters in Peoria on May 2, August 15, and November 8, 1995, and January 30, 1996. However, no agreement was reached.

5. On February 8, 1996, the Board advised the parties that mediation would resume "at the NMB's office in Washington DC, at 10:00 A.M. on February 28 and 29, 1996." The Company replied that "we cannot agree to a meeting in Washington, D.C." but would meet in a "neutral site" in Springfield, Illinois, or St. Louis, Missouri. In response to this request, the Board rescheduled the mediation session to February 28, 1996, in St. Louis. No agreement was reached at that meeting.

6. On April 2, 1996, the Board advised the parties that mediation would resume "at the NMB's offices, Washington, DC, at 10:00 A.M. on April 24 and 25, 1996." The Company responded by letter that it was "not agreeable to the proposed meetings April 24 and 25" and made clear that it did "not feel that Washington, D.C. is an appropriate site. FSR's office is in Peoria, Illinois, and its operations are in Fort Smith, Arkansas. Washington is a very long way from both of these places."

7. On April 8, 1996, the Union wrote to the Company stating, "In order to reach an agreement, we are willing to drop our demands for a seniority provision, an overtime provision and a shorter agreement term and accept your last proposal with a few changes." The Union's two substantive changes were a fifty-cent an hour yearly wage increase and an increase in bereavement leave from two to three days.

8. On April 15, 1996, the Company rejected the Union's proposed changes and stated that it had "no choice but to ask Bob [Martin] to declare an impasse and release us from Mediation." On April 17, 1996, the Union wrote to the Board stating that it did "not agree with the carrier that an impasse has been reached" and that the Union "stands ready to meet with the carrier in Washington as previously directed by the NMB." That same day, the Company responded to the Union's letter and advised the Board that "Washington, D.C. is not an appropriate place to meet with the organization, and we are unwilling to meet there."

9. On April 22, 1996, Stephen E. Grable, the Chief of Staff of the Board, sent the following communication to the parties: This is to advise you that mediation sessions scheduled for April 24 and 25, 1996, at the NMB offices, Washington, DC have been cancelled because of carrier refusal to attend. Consistent with the Board's obligation under the Railway Labor Act to make its best efforts to assist the parties in making agreements,

the mediator has determined that convening the parties in Washington, DC will further this purpose. Please advise me by no later than April 25, 1996 of four consecutive days in April or May in which you will be available to meet with Mediator Martin.[1]

10. On April 23, 1996, the Union responded that it was "available to meet on any days suggested by the Carrier, even if we have to rearrange our schedules to do so." However, that same day, the Company wrote to the Board stating, "[I]t remains our position that Washington, D.C. is not an appropriate place to meet with the organization." On May 6, 1996, the Board recessed the mediation sessions "until further notice" and advised the parties that "mediation will resume at request of either party."

11. On May 10, 1996, the Union filed a Complaint against the Company for preliminary and permanent injunctive relief requiring the Company to cease and desist from hindering the bargaining process. The Complaint also requested a declaration that the Company has violated the RLA. Along with the Complaint, the Union filed a motion for preliminary injunction.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this case pursuant to section 2, First of the Railway Labor Act which enforces the duty of a carrier to settle disputes. 45 U.S.C. § 152, First. This section of the RLA "was intended to be more than a mere statement of policy or exhortation to the parties; rather, it was designed to be a legal obligation, enforceable by whatever appropriate means might be developed on a case-by-case basis." *Chicago and North Western Ry. Co. v. United Transp. Union,* 402 U.S. 570, 577, 91 S.Ct. 1731, 1735, 29 L.Ed.2d 187 (1971).

2. For purposes of the Railway Labor Act (RLA), the Union is a "representative" under 45 U.S.C. § 151, Sixth, and the Company is a "carrier" under 45 U.S.C. § 151, First.

3. This is a "major dispute" under the RLA because it relates to the formation of a collective bargaining agreement between the parties. *Burlington Northern R.R. Co. v. United Transp. Union,* 862 F.2d 1266, 1271 (7th Cir.1988). Because major disputes concern the creation of contractual rights and pose the greatest threat to the goals of the RLA (i.e. interruptions to commerce and labor strife), they are designed to be settled by the parties themselves through negotiation and mediation under the auspices of the National Mediation Board. *Id.* at 1272. The parties are not under compulsion to agree on specific issues, but rather to exhaust all possibilities of conciliatory, negotiated agreement before resorting to self-help measures. *Id.*

4. The judicial scope of review of Board decisions "is one of the narrowest known to the law." *International Assoc. of Machinists and Aerospace Workers, AFL–CIO v. National Mediation Bd.,* 930 F.2d 45, 48 (D.C.Cir.), *cert. denied,* 502 U.S. 858, 112 S.Ct. 173, 116 L.Ed.2d 136 (1991) *citing Local 808, Bldg. Maintenance Serv. and R.R. Workers v. National Mediation Bd.,* 888 F.2d 1428, 1433 (D.C.Cir. 1989). Thus, the Court will interfere with the Board's efforts only upon a showing of "patent official bad faith." *Id. citing Local 808,* 888 F.2d at 1434. In fact, no court has ever successfully ordered the Board to terminate its mediation processes. *Id.* One reason for this highly deferential standard is that the "Board will always know things about the parties and their dispute that the court does not know and can never know." *Local 808,* 888 F.2d at 1436. Thus, judges are in no position to second-

---

**1.** The Court rejects Defendant's contention that a disputed question of fact exists as to whether this communication by the Board is mandatory in nature. While the Board did not explicitly "order" the parties to bargain in Washington, D.C., it did state that pursuant to its obligations under the RLA, it "has determined that convening the parties in Washington, DC will further this pur-

pose." Such language is clearly mandatory. Because the Board has no inherent authority to enforce this directive, *Detroit and Toledo Shore Line R.R. Co. v. United Transp. Union,* 396 U.S. 142, 158, 90 S.Ct. 294, 303–04, 24 L.Ed.2d 325 (1969), it is not surprising that the word "order" does not appear in the Board's pronouncement.

guess the actions of mediators. *Id.* Moreover, intrusive judicial scrutiny would likely prolong the dispute and further detract from the mediatory effort. *Machinists & Aerospace Workers,* 930 F.2d at 49.

5. Engaging in a "take-it-or-leave-it" bargaining strategy does not sufficiently comply with the Board's statutory obligation to bring about a peaceful settlement by mediation. *Chicago and North Western Ry. Co. v. United Transp. Union,* 330 F.Supp. 646, 650–51 (N.D.Ill.1971). Thus, the mere invocation by one of the parties that mediation has "failed" is not alone enough to end the process. *Machinists & Aerospace Workers,* 930 F.2d at 48. It could be said at any stage in a mediation process prior to a successful conclusion of a collective bargaining agreement that mediation up to that point had failed. *Id.* Moreover, the party's invocation that mediation has failed may only be a ploy designed to make the other side give in. *Id.* at 49. It is only when the Board itself notifies the parties "in writing that its mediatory efforts have failed" that Congress expected legal significance to attach to that finding. *Id.*

6. Defendant's position is that it is not challenging the Board's authority to pursue further mediation between the parties; it is only challenging the *place* of mediation which the Board has designated—Washington, D.C. Defendant contends that the location of mediation should be the subject of further bargaining between the parties. Defendant cites no authority for this proposition except to argue that section 2, Sixth of the RLA controls this dispute. 45 U.S.C. § 152, Sixth. However, by its terms, that section applies only to "minor" disputes between a carrier and its employees "arising out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions." *See CSX Transp. Inc. v. Marquar,* 980 F.2d 359, 361 n. 2 (6th Cir. 1992); *Bovers v. Flying Tiger Line Inc.,* 979 F.2d 291, 298–99 (2d Cir.1992); *Burlington Northern,* 862 F.2d at 1271 n. 4. Because this case involves a "major" dispute under the Act arising in the absence of a collective bargaining agreement, *Bur-*

*lington Northern,* 862 F.2d at 1271, the provisions of 45 U.S.C. § 152, Sixth are inapplicable.

7. In this case, Defendant's refusal to mediate at the location designated by the Board is tantamount to declaring an impasse in the bargaining process. Unlike the previous occasion in which the Board acquiesced to Defendant's request to move the site of mediation from Washington, D.C. to St. Louis, the Board does not now appear to be wavering in its directive to hold the sessions in Washington, D.C. Just as Defendant cannot unilaterally declare an impasse in the face of continuing mediation by the Board, *Machinists & Aerospace Workers,* 930 F.2d at 48; *Local 808,* 888 F.2d at 1441, so too it cannot defy the authority of the Board to conduct mediation sessions at a particular location.

8. Perhaps the Board is purposefully directing that its mediation sessions be held in Washington, D.C. in order to gain a strategic advantage over Defendant and force it to agree to a collective bargaining agreement. However, this is part of the inherent authority of the Board to resolve such disputes and does not constitute the "patent official bad faith" necessary to overturn such a decision of the Board. *Machinists & Aerospace Workers,* 930 F.2d at 48; *Local 808,* 888 F.2d at 1434. If the Board has the authority to continue mediation in spite of one party's contention that an impasse has been reached, it should also be able to designate the particular location of the mediation over a party's objections.

9. The preliminary injunction requirements are more relaxed in the context of resolving major disputes under the RLA. District courts may enjoin a violation of the *status quo* pending completion of the required mediation procedures without the customary showing of irreparable injury. *Consolidated Rail Corp. v. Railway Labor Execs.' Assoc.,* 491 U.S. 299, 303, 109 S.Ct. 2477, 2480–81, 105 L.Ed.2d 250 (1989); *see also Brotherhood of Maintenance of Way Employees, Lodge 16 v. Burlington North-ern R.R. Co.,* 802 F.2d 1016, 1021 (8th Cir.1986) (Arnold, J., concurring); *Divi-*

sion No. 1, Detroit, Brotherhood of Locomotive Engineers v. Consolidated Rail Corp., 844 F.2d 1218, 1220, 1226 (6th Cir. 1988) (and cases cited therein). Thus, Plaintiff need not show irreparable injury in order to be entitled to relief.

10. However, even the traditional requirements for preliminary injunctive relief have been met here. In order to obtain a preliminary injunction, the movant must show: (1) that the case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; (3) that the movant will suffer irreparable harm if the injunction is not granted. Storck USA, L.P. v. Farley Candy Co., 14 F.3d 311, 313–14 (7th Cir.1994). If these three conditions are met, the court must balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently. The greater the movant's chance of success on the merits, the less strong a showing must it make that the balance of harms is in its favor. Id. at 314. In addition, the court must consider the public interest in its decision. Id.

(a) In light of the preceding discussion that the Board should be accorded a great deal of deference in regard to its choice of location for mediation, Plaintiff's success on the merits is not only likely, but certain. The Court has decided this issue on the merits pursuant to Fed.R.Civ.P. 65(a)(2).

(b) Plaintiff has no adequate remedy at law other than injunctive relief because the purpose of this case is to continue the mediation process. Monetary compensation cannot substitute for continuation of bargaining.

(c) If the injunction is not granted, Plaintiff will suffer irreparable harm because the bargaining process will be effectively halted. Defendant could delay mediation for an indefinite period contrary to Plaintiff's rights under the Railway Labor Act.

(d) The balancing of harms weighs clearly in favor of Plaintiff. Because Plaintiff's likelihood of success is certain, Defendant would require a very great harm to

shift the balance in its favor. Here, the most harm that Defendant can claim is that its representatives will have to travel to Washington, D.C. in order to engage in further mediation sessions. However, the Company has no right to have these sessions conducted at another location and must defer to the Board's authority on this matter. Defendant's argument that it will be harmed by being forced to accede to the jurisdiction of the Washington, D.C. courts is disingenuous. In deciding on an appropriate place to mediate the dispute, the Board need not consider the potential jurisdiction of the courts in that location. Such a concern is irrelevant to the instant dispute and speculative at best.

(e) The public interest also demands that injunctive relief be granted. Because major disputes concern the creation of contractual rights and pose the greatest threat to the goals of the RLA, the public's interest in avoiding interruptions to commerce and labor disputes in the railroad industry weighs heavily in favor of Plaintiff here. Thus, preliminary injunctive relief is appropriate.

11. Defendant objects to the entry of a preliminary injunction without the giving of security pursuant to Fed.R.Civ.P. 65(c). However, Defendant suggests no specific amount for such a bond. Indeed, the only monetary damage that may occur if the Seventh Circuit finds this injunction to have been improvidently granted is the cost of Defendant's representatives' travel to Washington, D.C. Thus, the Court will set a bond of $3,000.00 which should be more than enough to cover such costs for Defendant's representatives.

12. By refusing to accede to the Board's request to mediate its dispute in Washington, D.C., Defendant has violated section 2, First of the Railway Labor Act. 45 U.S.C. § 152, First.

### CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Preliminary Injunction [Doc. # 3] is **GRANTED.** Pursuant to Fed. R.Civ.P. 65(c), Plaintiff shall post **$3,000.00 as security** with the Clerk of the U.S. Dis-

trict Court for the Central District of Illinois by 5:00 p.m. on June 28, 1996. Such bond shall remain posted until the final disposition of this case on appeal or until the time for appeal has elapsed with no appeal filed.

IT IS FURTHER ORDERED that the preliminary injunction motion is consolidated with a hearing on the merits pursuant to Fed.R.Civ.P. 65(a)(2) so as to **GRANT PRE-LIMINARY AND PERMANENT INJUNC-TIVE RELIEF** as follows:

Defendant, its agents, officers, employees and representatives, shall immediately cease and desist from its refusal to participate in mediation as conducted by the National Mediation Board at such places, *including Washington, D.C.*, and times as the Board deems appropriate, provided that the Board acts in good faith. In compliance with Section 2, First of the Railway Labor Act, during such mediation, the parties shall exert every reasonable effort to reach an agreement concerning the rates of pay, rules, and working conditions of the employees whom Plaintiff represents.

The Court retains its jurisdiction to enforce any violation of this Order by contempt proceedings or otherwise.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter final judgment in favor of Plaintiff, each party to bear its own attorney's fees and costs. This case is **TERMINATED.**